FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 FEB 6 PM 3 43

STEPHAN HARRIS, CLERK
CASPER

Jason E. Ochs, WY Bar #7-4965
Alan J. Dees, WY Bar # 7-5103
OCHS LAW FIRM, P.C.
323 S. David Street
Casper, WY 82601
Office: 307-234-3239
Facsimile: 307-235-6910
jason@ochslawfirm.com
alan@ochslawfirm.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ADRIAN L. WHITE, | ) |
| Plaintiff, | ) ) ) ) |
| | ) Civil Action No. 14-cv-27-F |
| vs. | ) |
| WYOMING STATE PENITENTIARY, WYOMING DEPARTMENT OF CORRECTIONS | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Adrian L. White, by and through his attorneys, Jason E. Ochs and Alan J. Dees of Ochs Law Firm, P.C., hereby complains against the Defendants, Wyoming State Penitentiary and Wyoming Department of Corrections, and states and alleges as follows:

Receipt # cas 1193
Summons: 2  issued
         ___ not issued

## PARTIES

1. Plaintiff, Adrian White, an African-American, is an adult male individual and citizen of the United States who currently resides at 826 East Thomas L Parkway, Lansing, Michigan. At all relevant times, Mr. White was an employee of the Wyoming State Penitentiary, Wyoming Department of Corrections within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and applicable case law.

2. Defendant, Wyoming State Penitentiary [herein referred to as "WSP"], is a governmental agency of the Wyoming Department of Corrections [herein referred to "WDOC"], and is located at 2900 S. Higley Blvd., Rawlins, Wyoming.

3. At all relevant times, Defendants WSP and WDOC employed in excess of 500 employees and were, and at all times herein was and is, an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

## JURISDICTION AND VENUE

4. This is, in part, an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981; 42 U.S.C. § 1981A; 42 U.S.C. § 1988, and the common law of the State of Wyoming.

5. The jurisdiction of this Court is predicated upon 28 U.S.C. § 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 relating to declaratory judgments. This Court may also exercise pendant jurisdiction over Plaintiff's state

law claims arising under the common law and statutes of the State of Wyoming, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the United States District Court for the District of Wyoming pursuant to 28 U.S.C. § 1391(b), where Defendants are located, and where all the wrongful conduct and events occurred.

## ADMINISTRATIVE PREREQUISITES

7. Mr. White has complied with all the administrative prerequisites to action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 as follows:

A. On or about February 13, 2013, Mr. White timely filed a formal charge of discrimination with the Equal Employment Opportunity Commission [hereinafter referred to as E.E.O.C.] against the Wyoming Department of Corrections - Wyoming State Penitentiary.

B. Mr. White promptly and diligently accommodated all E.E.O.C. requests for information and fully cooperated in the agency's investigation of this matter;

C. Mr. White received his "Notice of right-to-sue" letter on November 13, 2013. Mr. White has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action.

## FACTUAL ALLEGATIONS

8. Plaintiff was employed by Defendant WDOC on or around July 2010 and worked at the state prison (WSP) located in Rawlins, Wyoming.

9. At all relevant times, WSP operated under the direction of the WDOC.

10. At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of Mr. White's employment were governed by Defendant WSP and WDOC.

11. At all relevant times, Mr. White fully, adequately, and completely performed all of the functions, duties, and responsibilities of his employment with Defendant WSP.

12. Mr. White has a college education and after graduation from the academy, began working at WSP as a correctional officer in around October 2010 and has a history of promotions and salary increases.

13. While working at WSP on October 24, 2010, upon a disagreement with another white officer, Mr. White was threatened with physical violence in the presence of a Shift Lieutenant and another Uniform Officer. Mr. White, the white officer, and the witnessing officer all filed respective reports describing the incident that same day.

14. Mr. White was told that the matter would be investigated by the security major, but he never heard anything over the next couple of months except other officers complaining and murmuring about him filing reports.

15. Apparently, the report never reached its intended audience, and when it finally did, after filing a supplementary report to the security major and human resources, Mr. White was again assured it would be "investigated." Mr. White questioned the sincerity of statement, suspecting the higher-ups were concealing a hostile work environment.

16. At the time, WSP employed about 7 black employees out of 300+ employees.

17. Another incident occurred on January 27, 2011, where a white employee stated he was going to a Ku Klux Klan meeting during the weekend, then made a crass remark about lynching black people and looked over at Mr. White. This unprovoked comment was made in the presence of two other white officers (one male and one female) and a white female corporal. Mr. White immediately left the room to avoid any confrontation.

18. Mr. White, the two other white officers, and the white female corporal all reported the incident to the watch commander and Mr. White finished his shift with much trepidation.

19. Mr. White again filed a supplemental report to the security major and human resources because nothing was ever done about his previous report. Mr. White believed another cover up was taking place and told his watch commander that he was determined to be treated and respected like a human being.

20. The following week, in what can only be described as an act of retaliation for filing reports and requesting respect, Mr. White was transferred to work in a unit (Unit A-1) that housed the high security threat white supremacist groups and contained no black inmates or staff.

21. In late April, Mr. White received a letter from the warden of WSP regarding his January report. The report indicated there was no evidence of discrimination or a hostile work environment.

22. Mr. White then submitted a letter to the Director of the Department of Corrections where he outlined and explained the issues he was dealing with in WSP and requested a meeting. Mr. White instead was investigated and interrogated by the Human Resources director Andy Aldridge, where he was practically accused of making mountains out of molehills.

23. During this interview, Mr. White requested and was denied union representation in violation of his *Garrity* rights, so another black officer attended the meeting with Mr. White.

24. Mr. Aldridge apparently did not see any problem with placing a black officer into a heavily white supremacist unit, that doesn't even house any black inmates, where he is constantly subjected to violence, offensive racial epithets, and death threats.

25. The Wyoming Association of Correctional Employees Union (hereafter) "Union" filed a grievance on June 29, 2011 requesting that Mr. White not be placed in Unit A-1. In fact, up until Mr. White was assigned this unit, a black or African-American guard had never been assigned this unit due to security concerns.

26. An unsuccessful mediation took place on or around September 6, 2011 and included representatives from the NAACP, the Union, the Warden, Staff of WSP, and the HR Manager at WSP.

27. Mr. White remained in Unit A-1 until March 2012, when he broke his leg. The incident in which Mr. White broke his leg took place in Unit H-1, a protective custody unit, and within WSP Unit H-1 post orders, the only ranking officers that could be assigned to work there were of the rank of Corporal or higher. At the time of Mr. White's injury he only held the rank of an Officer and should not have been assigned to work in Unit H-1. He returned to work in July 2012, where he began working in Unit B.

28. After a dispute with caseworker Lisa Kilvington over an inmate bribery issue, she attempted to coerce other officers into making false claims in order to damage his reputation and derail his chances for a promotion. After reports were submitted to Watch Command and

Human Resources by Mr. White and the other officers she tried to coerce, Lisa Kilvington claimed that Mr. White was making sexual advances towards her. To Mr. White's knowledge, nothing was ever done about these deliberately false and malicious accusations.

29. Nevertheless, Mr. White was promoted to Sergeant on or about September 27, 2012. This only served to increase the animosity against Mr. White because he outscored all the other white corporals and officers who also pursued the sergeant promotion.

30. Shortly thereafter Mr. White was accused by a fellow white officer of only obtaining the promotion because he is black. This Officer Breznau was vocal in his disdain to several new hires who were completing on the job training, with the intent to disparage Mr. White's reputation.

31. Mr. White, the new hires, and another Sergeant who heard the remarks firsthand filed respective reports regarding the incident.

32. About a week later, Mr. White was switched to night shift. He informed the security major and the security captain that if he is forced to work nights, he would have to send his kids back to Michigan. The security major acted unconcerned and informed him he would be starting night shift shortly. Just like he told the security major, Mr. White had to send his kids to live with their grandmother.

33. That same month, Mr. White was falsely accused of sleeping with a new officer by his white Lieutenant and other officers, thus damaging his reputation further.

34. Within the same month, Mr. White was also verbally challenged by a white Officer whom he directly supervised and the Officer told Mr. White that he didn't respect his

stripes because he didn't "earn" them. When Mr. White informed his direct supervisor, the same white Lieutenant from the above paragraph, he sided with the white officer further disparaging Mr. White's reputation and supervisory ability.

35. Unlike many other officers at WSP, Mr. White is black and was promoted from outside of the circle of officers chummy with the higher ups, and from all appearances is harassed, disrespected, and intimidated for this very reason.

36. Mr. White discovered e-mails between the white Human Resources Manager of WSP and another white Sergeant and heard communications acknowledging and bemoaning the racial tension within WSP and how most employees were afraid to speak up because of the fear of being retaliated against by the Warden and other higher ups.

37. On December 12, 2012, Mr. White found an e-mail printed out that he sent a month before to the same white sergeant who was speaking to the white human resources manager wherein he was attempting to informally resolve a situation. His name was crossed out and "Douche Nigger" was intentionally written in. Mr. White immediately asked to be removed from his shift for the remainder of the day.

38. Mr. White submitted a confidential report to Warden Wilson and was granted a meeting a few days later on January 17, 2013.

39. Mr. White told the Warden about all the myriad of incidents that had occurred since October 2010, yet the Warden displayed a disturbing lack of concern about what Mr. White had experienced. This conversation was recorded.

40. Warden Wilson said the WSP is a "puppy prison" and basically told Mr. White to deal with it. The meeting ended after Warden Wilson continued to question Mr. White's allegations that were in the several reports Mr. White had filed.

41. Mr. White filed his first request for administrative leave on January 21 detailing his conversation with the Warden and everything he is dealing with, including death threats from inmates and WSP's dismissive response to his complaints. A few days later he received an anonymous tip from an inmate that he had a price on his head and was about to be assaulted.

42. Around January 28, 2013, Mr. White was placed in "less respectable" position at what is called Check Point, which serves as the switchboard for calls in the prison.

43. After a couple of weeks of working at Check Point, Mr. White and a Corporal were privy to a conversation between two white officers where they discussed how to get Mr. White removed from the site and complained about him being a thug and playing the "black card." Apparently, the officers left the phone off the hook and this triggered a relay to the switchboard which Mr. White responded to, only to hear more of what he had been hearing for the past two and a half years.

44. After multiple requests from Mr. White and his union, Mr. White was placed on administrative leave on February 15, 2013. He was removed from Administrative leave on July 10, 2013 and placed on Worker's Compensation so he could have a second surgery on his right leg.

45. Fearing for his health and safety, Mr. White submitted his resignation effective immediately to the Wyoming Department of Corrections on August 26, 2013.

## FIRST CAUSE OF ACTION

Racially Hostile Work Environment

46. Plaintiff incorporates by reference all the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

47. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, and 42 U.S.C. § 1981, for relief based upon the unlawful employment practices of the above names Defendant(s). Specifically, Mr. White complains of Defendant WSP's violation of Title VII's prohibition against discrimination in employment and based, in whole or in part, upon an employee's race and also on allowing, perpetuating, and attempting to cover up a racially hostile work environment.

48. Mr. White is an African-American male and during his employment with Defendant and during his employment with WSP and WDOC was a member of a class protected under Title VII against race based discrimination by his employer, Defendant(s), or its supervisory personnel.

49. At all relevant times, Mr. White fully, adequately, and completely performed all of the functions, duties, and responsibilities of his employment with Defendant WSP and WDOC.

50. Mr. White was subjected to unwelcome harassment by fellow officers in the form of racist remarks, threats, disparagement, disrespect, interference with job duties, and retaliation.

51. Fellow officers harassed Mr. White and WSP staff allowed Mr. White to be bullied and retaliated against him because he stood up to the "good ole boy" system at WSP and because he is a hard working black man who earned a promotion over other white officers.

52. The harassment, threats, hostile environment and the failure of WSP and WDOC to act on his behalf negatively affected his morale, position, influence, and leadership causing him to take administrative leave and eventually resign his position for concern over his health, safety, and life. Mr. White intended to make a career with WSP and WDOC and retire therefrom, but was unable to tolerate the racial animosity, abuse, and lack of concern from the higher ups at the WSP.

53. Mr. White filed no less than (twelve) 12 reports to the WSP and WDOC detailing numerous incidents of a hostile work environment, most of which required supplemental reports and/or letters from his union to even receive a response. Both the WSP and the WDOC knew of these claims of a hostile work environment but nonchalantly declined to take remedial measures or blamed Mr. White himself, while letting off the employees complained of off with a slap on the wrist.

54. WSP allowed the workplace to be permeated with pervasive discriminatory intimidation, ridicule, and insult that altered the condition of Mr. White's employment.

55. Mr. White dreaded going into work and suffered from extreme anxiety, headaches, insomnia, loss of appetite, nightmares and other psychological harm during his employment with WDOC.

56. Mr. White ultimately resigned from his position at the WSP, had to move back with family, and has been unable to secure employment in his field, because of what can be inferred as negative references WSP and WDOC provide to prospective employers.

## DAMAGES

57. The conduct of the above-named Defendants, as set forth herein, in violating Mr. White's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981, and the common law of Wyoming, caused injuries, damages, and harm to Mr. White, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life, all statutory money damages; and consequential losses.

WHEREFORE, Plaintiff Adrian White requests judgment and damages against Defendant, Wyoming State Penitentiary and Wyoming Department of Corrections, as follows:

A. A declaratory judgment that Defendants have violated Mr. White's right to be free from discrimination in the workplace and a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981, 42 U.S.C. 1981A;

B. Enter an injunction ordering Defendant WSP and WDOC to make Plaintiff whole with full back and benefits or in the alternative, front pay.

    C.    An award to Mr. White for compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including emotional distress and mental anguish, impairment of the quality of life, and consequential loss;

    D.    An award to Mr. White for exemplary and/or punitive damages in an amount to be shown at trial;

    E.    An award to Mr. White for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(k), 42 U.S.C. § 1981A, 42 U.S.C. § 1988 and as provided under state law;

    F.    An award to Mr. White of interest on any awards at the highest rate allowed by law; and

    G.    Such other and further relief as this Court seems just and appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff requests trial to a jury on all claims allowed by law.

Dated this 6th day of February, 2014.

_____
Jason E. Ochs – WY State Bar #7-4965
Alan J. Dees – WY State Bar #7-5103
OCHS LAW FIRM, P.C.

323 South David
Casper, WY 82601
Tel: (307) 234-3239

ATTORNEYS FOR PLAINTIFF